HAWKINS, Presiding Justice,
for the Court:
Jimmy Lee Peterson has appealed from his conviction in the circuit court of the First Judicial District of Harrison County of the crime of burglary of an inhabited dwelling, and sentence to 15 years imprisonment, and as a habitual offender under Miss.Code Ann. § 99-19-81, without parole.
The only issue we address on this appeal is the admission into evidence in rebuttal of a prior contradictory statement of Peterson as to how he had cut his arm, which injury the officers and prosecuting witness observed at the time of Peterson’s arrest.
Because Peterson during direct examination by his own counsel injected the matter of how he received this injury, it was not improper to permit an investigating officer to testify that he gave another version of the injury at the time of his arrest, neither version implicating guilt.
FACTS
The grand jury of the First Judicial District of Harrison County on October 16, 1986, indicted Peterson for burglary of the apartment residence of Raymond Henry on or about June 1,1986, with intent to steal a television set.
At trial Henry testified he saw Peterson (with whom he was acquainted) break into his apartment, and cart off the television set in the early morning hours. According to Henry there were three attempts to burglarize his apartment that night. Upon the *1341 third occasion a window was smashed. It had been raining and there were puddles of water in the street.
Henry testified he saw Peterson “rub his hand” in the puddle of water, and heard him curse.
Later that morning when Henry pointed Peterson out to Dennis Froshour, a deputy sheriff, and Peterson was arrested, Henry said he saw that Peterson’s right arm was cut at the wrist and bleeding. Henry gave Peterson his handkerchief to wrap the wound.
Froshour testified that he observed a large gash on Peterson’s arm at the wrist, “still fresh.” He said the wound was “still moist with blood and it had not coagulated all the way.” Froshour also stated that as he was about to handcuff Peterson, Henry was afraid that the handcuffs would dig into the wound, and gave Peterson his han-derchief to wrap his arm.
No attempt was made by the State during its case-in-chief to introduce any statement by Peterson following his arrest.
Peterson’s defense was an alibi. On direct examination by his counsel, he was asked where the gash, which was on his wrist the day he was arrested, had come from. He replied that he had injured his arm about a week before while changing a motor on his car.
On cross-examination, without objection from defense counsel, Peterson was asked if he had not told Detective Donald Keith with the Harrison County sheriff's department that he had received the injury to his arm in a fight. Peterson denied having made such statement.
The State called Keith as a rebuttal witness. Over defense objection he was permitted to testify that Peterson had told him he received the injury in a fight.
Keith also testified that he had given Peterson the Miranda warnings and Peterson had told him he did not wish to say anything. Keith said he asked him about the cut, anyway, because “I wanted to see how bad it was and if he needed medical attention.”
LAW
Keith may very well have violated Peterson’s right to remain silent when he questioned him as to the source of his injury after Peterson had told Keith he did not wish to talk. Miranda v. Arizona, 384 U.S. 436, 445, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694, 707 (1966). “Likewise, if the individual is alone and indicates in any manner that he does not wish to be interrogated, the police may not question him.”
Two other facts are equally clear: (1) Peterson was in no way either coerced or induced to answer Keith’s question, and (2) the answer he gave did not admit guilt or in any way implicate him in the burglary.
When Peterson took the witness stand in his own defense, he chose during direct examination to explain how he got the cut, and inject this matter into his defense. Even if the statement to Keith had been an admission of guilt, because it is also clear that it was in fact freely and voluntarily made, it would have been admissible for impeachment. See, Oregon v. Haas, 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975); Wallace v. State, 466 So.2d 900, 905 (Miss.1985); Day v. State 382 So.2d 1071 (Miss.1980). And in Powell, a/k/a Hobson v. State, 483 So.2d 363 (Miss.1986), where there was at most a technical failure to comply with the Agee standard [Agee v. State, 185 So.2d 671, 673 (Miss.1966)], we held a confession inadmissible as part of the State’s case-in-chief could be used for impeachment purposes. In this case there is nothing to suggest that Peterson’s statement to Keith was not freely and voluntarily made. Indeed, Peterson, neither at trial nor on appeal, made any contention otherwise.
Finally, and even more significant, however, is that Peterson’s answer to Keith was not an admission of guilt. It was perfectly proper, therefore, for the State to question him about it and offer it in rebuttal, not as an admission of guilt, but to attack his credibility as a witness, Rule 613, Mississippi Rules of Evidence.
AFFIRMED.
*1342 ROY NOBLE LEE, C.J., DAN M. LEE, P.J., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON and BLASS, JJ., concur.
PITTMAN, J., not participating.