925 So.2d 130 (2005)
Willie MAYES a/k/a Willie Clarence Jones, Appellant
v.
STATE of Mississippi, Appellee.
No. 2004-KA-00962-COA.
Court of Appeals of Mississippi.
November 1, 2005.
Rehearing Denied January 17, 2006.
*132 Dan W. Duggan, Brandon, attorney for appellant.
Office of the Attorney General by Jeffrey A. Klingfuss, attorney for appellee.
Before KING, C.J., CHANDLER and ISHEE, JJ.
KING, C.J., for the Court.
¶ 1. On March 30, 2004, Willie Mayes was convicted by a jury in the Hinds County Circuit Court of possession of cocaine. Mayes was sentenced as an habitual offender to serve a term of sixteen years in the custody of the Mississippi Department of Corrections without the possibility of parole. Aggrieved, Mayes raises the following issues on appeal:
I. Whether the trial court erred in refusing jury instruction D-9.
II. Whether the trial court erred in not suppressing the confession.
III. Whether the trial court erred in not directing a verdict, or in the alternative, a judgment notwithstanding the verdict.
¶ 2. Finding no error, we affirm.

STATEMENT OF FACTS
¶ 3. On June 14, 2002, officers of the Jackson Police Department Narcotics Unit were dispatched to Galilee Street after receiving several complaints about drug activity in the area. When the officers arrived, a vehicle containing three passengers was parked in the middle of the narrow street, while Mayes was standing outside of the vehicle at the passenger side window. Detective John Harris saw what he believed to be a hand-to-hand transaction between Mayes and one of the vehicle's occupants. Harris emerged from his unmarked vehicle as Mayes began chewing a cigar wrapper filled with marijuana. Harris then handcuffed Mayes, arrested him for misdemeanor possession of marijuana, and ordered him to spit the marijuana out of his mouth. Detective Harris and Officer James McGowan testified that Mayes began putting up a fight as Harris searched Mayes' person. During the search, Mayes tossed a small plastic bag on the ground which was later identified as crack cocaine. Harris read Mayes his Miranda rights before Mayes was transported to police headquarters. After arriving at the police station, Harris conducted a thorough search of Mayes' body and found three small plastic bags of marijuana concealed in his groin area. Harris then called Detective Robert Shegog to his office to witness the interview process. After Shegog arrived, Harris read Mayes his Miranda rights for a second time from a standard form. Mayes initialed the form by each statement. According to Detective *133 Harris, Mayes told him that he could give him information about persons possessing large amounts of crack cocaine if Harris could help Mayes with his impending charge. Harris told Mayes that Mayes' lawyer would have to speak with the district attorney about any potential deal. Both Harris and Shegog testified at trial that no promise whatsoever was made to Mayes. Mayes then signed a rights waiver form and Harris proceeded to interview him. Among the standard preliminary questions, Harris asked whether Mayes had been forced to give a statement and whether any promises or threats had been made in order to obtain a statement. Mayes answered in the negative to both questions. He then proceeded to make a statement that at the time of his arrest he possessed marijuana and a "crumb sack" of crack cocaine.
¶ 4. On March 4, 2004, Mayes filed a motion to suppress the statement given to Harris. Only Harris and Mayes testified at the suppression hearing which was held on March 22, 2004. Harris' testimony revealed the above-stated facts. However, Mayes testified that after signing the waiver but before interrogation commenced, Harris told Mayes that Harris could help Mayes if Mayes would give Harris information about anyone possessing more than an ounce of crack cocaine. Mayes further testified that he only made the statement about possessing crack because of Harris' alleged promise. The trial judge denied the motion to suppress finding that Mayes had been read his Miranda rights, read the rights himself, and signed the waiver form before any alleged offer had been made.
¶ 5. Both Harris and Mayes testified at trial. Additionally, the State called McGowan, Shegog and the drug analyst. The jury found that Mayes did possess crack cocaine at the time of his arrest.

ISSUES AND ANALYSIS

ISSUE I:

Whether the trial court erred in refusing jury instruction D-9.
¶ 6. Jury instructions must be read as a whole. Poole v. State, 826 So.2d 1222, 1230(¶ 27) (Miss.2002). While a defendant is entitled to have a jury instruction presenting his theory of the case, such instruction is properly refused if it states an incorrect legal standard, is fairly covered by another instruction, or if it lacks foundation in the evidence. Id. Mayes argues that his proposed jury instruction regarding the voluntariness of his confession should have been granted because it presented his theory of the case and because the instruction was supported by Mayes' testimony.
¶ 7. The voluntariness and admissibility of a confession is to be decided by the trial court judge as a matter of law, while the weight and credibility to be given to a confession is within the sole province of the jury. Scott v. State, 878 So.2d 933, 968(¶ 96) (Miss.2004) (citing Wilson v. State, 451 So.2d 724, 726 (Miss.1984)). However, there is no requirement that a trial court grant a separate instruction on the weight and credibility to be given to a confession. Id. The jury had already been instructed that it was their exclusive province to determine the facts in the case and to weigh the evidence. Instruction D-9[1] *134 did no more than instruct the jury that it was their duty to determine the weight to be given to Mayes' confession. As such, the instruction was fairly covered elsewhere and properly refused.

ISSUE II:

Whether the trial court erred in not suppressing the confession.
¶ 8. "The standard of review regarding a trial judge's ruling at a suppression hearing is whether substantial credible evidence was present to support the trial judge's finding when evaluating the totality of the circumstances." Greer v. State, 818 So.2d 352, 355(¶ 10) (Miss.Ct. App.2002). Since the trial judge sits as the finder of fact in determining the voluntariness of a confession, this Court will not disturb the trial judge's decision unless it is manifestly wrong. Id. at 355 (¶ 10).
¶ 9. The suppression hearing came down to Mayes' version of the interrogation versus Harris' version. Harris' version of events was corroborated by the suspect statement form which quoted Mayes as saying that his statement was being freely and voluntarily given and was not the product of threats or promises. When the trial judge admitted Mayes' confession, the judge decided as the fact-finder that Harris was the more credible witness. The trial court's decision was based on substantial evidence after hearing the conflicting testimony from Harris and Mayes. We cannot say that the trial court judge was manifestly wrong in determining that Mayes' confession was voluntary and admissible.
¶ 10. However, the suppression issue does not end here. Mayes argues not only that the trial court erred in determining that his statement was voluntary, but also that the court erred in not requiring the State to put Detective Shegog on the stand during the suppression hearing. Mayes relies on the case of Agee v. State, 185 So.2d 671 (Miss.1966),[2] which prescribes the procedure the trial court must follow to determine whether a confession is coerced and involuntary. Under Agee, the State has the burden of proving the voluntariness of a confession beyond a reasonable doubt. Id. at 673. The State may establish its prima facie case on the issue of voluntariness by presenting the testimony of an officer possessing personal knowledge that the confession was voluntarily made without coercion, threats or promises. Id. However, the defendant may then create a rebuttable presumption that the confession was involuntary by offering testimony that the confession was a product of violence, threats of violence, or offers of reward. Id. Agee further held that the State must then rebut the presumption by "offer[ing] all the officers who were present when the accused was questioned and when the confession was signed, or give an adequate reason for the absence of *135 any such witness." Id. Mayes contends that the trial court committed reversible error in not requiring the State to put Detective Shegog on the stand to rebut Mayes' testimony. We disagree.
¶ 11. "Only those persons who are claimed to have induced a confession through some means of coercion are required to be offered by the State under Agee." Abram v. State, 606 So.2d 1015, 1030 (Miss.1992) (citing Reid v. State, 266 So.2d 21, 26 (Miss.1972)). Mayes accused only Detective Harris of coercing him to make a statement. In fact, Mayes testified at the suppression hearing that although Shegog was present during interrogation, "he was way across the room and he couldn't hear what was going on on our side of the room." Therefore, the trial court did not err in not requiring Shegog to testify at the suppression hearing. This issue is without merit.

ISSUE III:

Whether the trial court erred in not directing a verdict, or in the alternative, a judgment notwithstanding the verdict.
¶ 12. While Mayes frames his final issue in terms of legal sufficiency, he also argues that the verdict was against the overwhelming weight of the evidence. In reviewing a challenge to legal sufficiency, this Court must view the evidence in the light most favorable to the State. Chambliss v. State, 919 So.2d 30, 34 (¶ 12) (Miss.2005). If "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," the challenge to legal sufficiency must fail. Id. "[W]e will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." Bush v. State, 895 So.2d 836, 844(¶ 18) (Miss.2005).
¶ 13. Mayes was indicted for knowingly possessing cocaine in an amount of more than one-tenth of a gram but less than two grams in violation of Mississippi Code Annotated § 41-29-139 (Rev.2001). Mayes testified that he did not possess cocaine at the time of his arrest. His testimony was the only evidence presented to the jury to support his contention. The jury heard the testimony of Officers Harris and McGowan who said that they saw Mayes toss the cocaine onto the ground. The jury also heard the testimony of the drug analyst who tested the contents of the bag Mayes threw on the ground. The analyst testified that the substance contained cocaine and weighed 1.35 grams. The jury also had Mayes' confession that he possessed cocaine at the time of his arrest. In viewing the evidence in the light most favorable to the State, we find that any rational juror could have concluded that Mayes knowingly possessed cocaine at the time of his arrest, and that the verdict was not against the overwhelming weight of the evidence.
¶ 14. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT OF CONVICTION OF POSSESSION OF COCAINE AND SENTENCE AS AN HABITUAL OFFENDER TO SERVE A TERM OF SIXTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE AND MYERS, P.JJ., BRIDGES, IRVING, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.
NOTES
[1] Refused instruction D-9 reads as follows:

The Court instructs the jury that unless you believe beyond a reasonable doubt that any alleged confession of Willie Mayes that was included in the evidence presented to you in this case was truthful and made by Willie Mayes of his own freewill, and not extorted by threat of harm or promise of benefit, you are to disregard any such alleged confession in reaching your verdict.
However, if you believe beyond a reasonable doubt that any such alleged confession by Willie Mayes was truthful, and made by Willie Mayes of his own freewill, not extorted by threat of harm or promise of benefit, you may consider such confession, if any, in reaching your verdict.
As with all evidence, it is for the jury to determine what, if any, worth and credibility to give any alleged confession.
[2] See Thorson v. State, 653 So.2d 876, 888 (Miss.1994)(explaining that Agee was decided two months before Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and although "[t]he principle enunciated in Agee remains sound, [] its importance to an accused has receded in view of the strong affirmative mandates of Miranda.")